UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOSEPH LAUDATI, individually and on
behalf of others similarly situated,

                         Plaintiff,        :      Case No. 7:21-cv-00272

             -v-               :      (JURY TRIAL DEMANDED)

MANHATTANVILLE COLLEGE,

                       Defendant.

-------------------------------------------------------------X

## CLASS ACTION COMPLAINT

Plaintiff Joseph Laudati ("Plaintiff"), by and through undersigned counsel, brings this action against Manhattanville College ("Defendant" or the "College") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## INTRODUCTION

1.    Plaintiff brings this case as a result of Defendant's refusal to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and transitioning all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.    This decision deprived Plaintiff and other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.    Defendant has either refused to provide reimbursement for the tuition, fees, and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided

1

inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.    This action seeks refunds of the amount Plaintiff and members of the Classes are owed on a *pro-rata* basis, together with the damages as pled herein.

## PARTIES

5.    Defendant Manhattanville College is a private institution of higher learning located in Purchase, State of New York.

6.    Upon information and belief, Defendant has an estimated endowment of approximately $31.2 million[1] and more than 2,490 enrolled students during the 2019-2020 academic year.[2]

7.    Moreover, Defendant was allocated more than $1.72 million of federal stimulus funds under the CARES Act.[3]

8.    From this bailout, Defendant has allocated only $861.5 thousand (the bare minimum required by law) to be distributed to students, presumably intending to retain the remaining $861.5 thousand for itself.[4]

9.    Plaintiff is an individual and a resident and citizen of the State of New York.

10.    Plaintiff was a student enrolled at the College during the Spring 2020 term.

---

[1] U.S. News, "Manhattanville College" *available at* https://www.usnews.com/best-colleges/manhattanville-college-2760 (Dec. 8, 2020).

[2] College Tuition Compare, "Student Population at Manhattanville College" *available at* https://www.collegetuitioncompare.com/edu/192749/manhattanville-college/enrollment/#:~:text=Manhattanville%20College%20has%20a%20total%202%2C494%20enrolled%20students.,Enrolled%20In%20Academic%20Year%202018-2019%20at%20Manhattanville%20College (Dec. 8, 2020).

[3] Manhattanville College, "CARES Act HEERF Distribution" *available at* https://www.mville.edu/sites/default/files/communication/45-daycares_act_report.pdf (Dec. 8, 2020).

[4] *Id.*

2

11.     Defendant has students from over 40 states and territories, as well as from over 35 countries.[5]

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York and has sufficient minimum contacts with New York.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is an educational institution domiciled and doing business in this district.

## BACKGROUND FACTS

15.     Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

16.      As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class.

17.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

18.     Defendant's institution offers its students the choice between in-person education

---

[5] https://www.mville.edu/about-manhattanville/fast-facts

and remote online courses.

19.    Plaintiff and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution for on-campus education and enrolled on that basis.

20.    Defendant has recognized and admitted the inherent difference between its in-person and select online courses, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

21.    Specifically, Defendant refers to its educational course options as:[6]

    a.  Onsite

    b.  Online

22.    The online courses are specifically marketed toward those who do not want "face-to-face meetings in the classroom."[7]

23.    Conversely, the in-person experience at the physical campus is marketed as the primary benefit of the on-campus educational experience.

24.    For example, Defendant encourages students to enroll in on-campus courses because the experience fosters "an environment that is collaborative, socially responsible, and community driven."[8]

25.    Accordingly, when students pay tuition in exchange for enrollment in the on-

---

[6] Manhattanville College, "Course Formats," *available at* https://www.collegetuitioncompare.com/edu/192749/manhattanville-college/enrollment/#:~:text=Manhattanville%20College%20has%20a%20total%202%2C494%20enrolled%20students.,Enrolled%20In%20Academic%20Year%202018-2019%20at%20Manhattanville%20College (Dec. 8, 2020).
[7] Manhattanville College, "Online Student FAQs," *available at* https://mville.libguides.com/ld.php?content_id=46116918 (Dec. 8, 2020)
[8] Manhattanville College, "Living on Campus," *available at* https://www.mville.edu/life/campus-life (Dec. 8, 2020).

campus programs at Defendant's College, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

    a.   Face-to-face interaction with professors, mentors, and peers;

    b.   Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

    c.   Student governance and student unions;

    d.   Extra-curricular activities, groups, intramurals, etc. ;

    e.   Student art, cultures, and other activities;

    f.   Exposure to community members of diverse backgrounds, cultures, and schools of thought;

    g.   Social development and independence;

    h.   Hands-on learning and experimentation; and

    i.   Networking and mentorship opportunities.

26.    Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.[9]

27.    When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which he had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

28.    In addition to tuition, Defendant charges certain mandatory fees to students enrolled in the undergraduate in-person programs, including, but not limited to, a $725.00 "Comprehensive Fee" per semester, which includes "all the resources *available to on-campus students*, such as

---

[9] Manhattanville College, "Messages to Community," *available at* https://www.mville.edu/covid-19-messages-to-community (Dec. 8, 2020).

registration, student activities, the library, gym, common areas, health services, and orientation."[10]

29.    On-campus students must also pay for additional fees, including a laundry fee, rooming fee, and meal plan fee.[11]

30.    Fees may also be related to a student's involvement or educational path at the College.  For example, students of Manhattanville College of Nursing are also required to pay for additional fees associated with examination, equipment, and laboratory utilization.

31.    Plaintiff was required to and did pay all mandatory fees associated with his Spring 2020 enrollment.

32.    As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class no longer had the benefit of the access and services for which these fees were paid. For example, Plaintiff no longer had access or ability to participate in peer tutoring and supplemental instructions at the Academic Resource Center, access to resources at the libraries, access to services of the College's health center and counseling and wellness center, access to the library, participation in athletics activities at gyms and athletic centers, or other student activities[12]; and no longer required transportation, safety, security, or parking benefits.[13]

33.    At Defendant's request and direction, Plaintiff and members of the Classes moved

---

[10] Manhattanville College, "Frequently Asked Questions," *available at* https://www.mville.edu/admissions/financial-aid-scholarships/student-accounts/faqs (Dec. 8, 2020).

[11] Manhattanville College, "Tuition and Fees, *available at* https://www.mville.edu/student-accounts/tuition-fees (Dec. 8, 2020).

[12] Manhattanville College, "Division of Students," *available at* https://mville.smartcatalogiq.com/en/2019-2020/Student-Handbook-Code-of-Conduct/Division-of-Student-Affairs (Dec. 8, 2020).

[13] Manhattanville College, "Campus Safety and Security," *available at*, https://www.mville.edu/life-manhattanville/campus-safety-security (Dec. 8, 2020).

out of on-campus housing and lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

## FACTUAL ALLEGATIONS

34.     Upon information and belief, Defendant's Spring 2020 term began on or about January 22, 2020.[14]

35.     Upon information and belief, Defendant's Spring 2020 term was scheduled to conclude on or about May 10, 2020.[15]

36.     Accordingly, Defendant's Spring 2020 semester was scheduled and contracted to consist of approximately 110 days.

37.     However, as a result of the COVID-19 pandemic, Defendant announced on March 11, 2020 that it was suspending all in-person classes from March 12, 2020 until March 29, 2020, moving all classes online effective immediately.[16]

38.     Plaintiff left campus on or about March 11, 2020, for spring break, with plans to return on or about March 22, 2020.

39.     However, on March 21, 2020, Defendant issued another announcement encouraging students to move out of their residence halls and return home by March 22, 2020, at 8:00 pm.[17]

40.     Defendant insisted Plaintiff not return back on campus to move his belongings out

---

[14] Manhattanville College, "Upcoming Events and Important Deadlines," *available at* https://www.mville.edu/academics/academic-services/undergraduate-academic-advising-office/upcoming-events-and-important (Dec. 8, 2020).
[15] *Id.*
[16] Manhattanville College, "Messages to the Community," *available at* https://www.mville.edu/covid-19-messages-to-community (Dec. 8, 2020).
[17] Manhattanville College, "Covid-19 Residence Update," *available at* https://www.mville.edu/life/campus-life/office-residence-life-and-conference-services/covid-19-residence-life-update (Dec. 8, 2020).

of his dorm room.

41.    On April 8, 2020, Defendant issued a "Credits/Refunds" message stating:

"All full-time undergraduate students will receive a fall semester credit in the amount of $350.00 for a portion of fees paid for the 2020 spring semester. Residential students who have left campus housing this semester and had paid for both room and board will receive an additional Fall semester credit in the amount of $1,500.00 for a total of $1,850."[18]

42.    In the same April 8, 2020 "Credits/Refunds" message Defendants stated:

"Graduating seniors who do not have an outstanding balance will receive a refund check by the end of May. Checks for graduating seniors will be mailed to the address those students have on file with the College. The College will only be able to provide checks for graduating seniors."[19]

43.    Unfortunately, appropriate refunds and credits were never issued.

44.    Almost immediately, students began demanding refunds for the fees and charges demanded in this action.

45.    As early as March 2020, the students at Defendant's institution started the first change.org petition. There are currently at least two such petitions on the change.org website with nearly 1,500 signatures combined.[20]

46.    Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class (defined below) were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

47.    These realities notwithstanding, Defendant has refused and continues to refuse to offer an appropriate refund with respect to the tuition that has already been paid.

---

[18] Manhattanville College, "Messages to the Community," *available at* https://www.mville.edu/covid-19-messages-to-community (Dec. 8, 2020).
[19] *Id.*
[20] *See, e.g.,* Petition 1, https://www.change.org/p/student-body-of-manhattville-college-reimbursement-of-spring-semester-for-manhattanville-college-students; Petition 2, https://www.change.org/p/protect-vulnerable-staff-make-sure-president-and-administration-take-salary-cuts (Dec. 8, 2020).

48.     Likewise, Plaintiff and members of the proposed Fees Class (defined below) were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services, and other opportunities.

49.     Nonetheless, Defendant has refused and continues to refuse to offer an appropriate refund with respect to fees that have already been paid.

50.     These refund policies are both completely arbitrary and wholly inadequate.

51.     Upon information and belief, the average on-campus housing cost (room/board and meal plan) for a standard student for Spring 2020 was $8,680 per semester.[21]

52.     The full (housing/fees) cost refund offered by Defendant equates to roughly 20% of the full cost that Plaintiff and members of the On-Campus Housing Class (defined below) had pre-paid.

53.     This refund is arbitrary and inadequate given that Plaintiff and other members of the On-Campus Housing Class were deprived of roughly 50% of the on-campus housing time for which they had already bargained and paid.

54.     Defendant has offered no explanation for how the 20% refund was determined and calculated.

55.     Defendant has refused, and continues to refuse, to offer an appropriate refund for to Plaintiff and members of the On-Campus Housing Class.

56.     In particular, Plaintiff's rent for on-campus housing (room/board and student meal plan) for the 2020 school year was $14,520.

57.     Plaintiff paid $2,806 for his meal plan for the Spring 2020 semester.

---

[21] College Factual, "Manhattanville College," *available at* https://www.collegefactual.com/colleges/manhattanville-college/paying-for-college/room-and-board/ (Dec. 8, 2020).

58.    Plaintiff paid $4,427 for room and board during the Spring 2020 semester.

59.    After the decision made by Defendant to shut down campus and in the wake of the global pandemic, Plaintiff decided to not return to Defendant's College for his sophomore year.

60.    After inquiring about the arbitrary and inadequate refund offered by Defendant of fees and on-campus housing cost, Plaintiff was informed by Defendant that Plaintiff was not eligible for *any* refund whatsoever, as he was not returning to Defendant's College.

61.    Defendant has refused, and continues to refuse, to offer any refund whatsoever to Plaintiff.

## CLASS ACTION ALLEGATIONS

62.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

### The Tuition Class:

All people who paid tuition for or on behalf of students enrolled in classes at the College for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

### The Fees Class:

All people who paid fees for or on behalf of students enrolled in classes at the College for the Spring 2020 semester.

### The On-Campus Housing Class:

All people who paid the costs of on-campus housing (room/board and meal plans) for or on behalf of students enrolled in classes at the College for the Spring 2020 semester who moved out of their on-campus housing prior to the completion of the semester because of Defendant's policies and announcements related to COVID-19.

63.    Excluded from the Classes is Manhattanville College, and any of their respective

members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

64.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

65.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

66.    The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable. Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

67.    This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)    Whether Defendant engaged in the conduct alleged herein;

(b)    Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

11

(c)     Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)     Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)     Whether Defendant breached its contracts with Plaintiff and the other members of the On-Campus Housing Class by not refunding them the full-pro-rated amount of their housing expenses when the pandemic prevented them from continuing to live on campus safely;

(h)     Whether Defendant was unjustly enriched by retaining payments of Plaintiff and the other members of the On-Campus Housing Class while such members moved out of their on-campus housing and lost access to the benefits of their meal plans;

(i)     Whether Defendant violated New York General Business Law § 349, § 350 *et seq.* as to Plaintiff and members of all Classes;

12

(j)    Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(k)    Whether Class Members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(l)    The amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

## Typicality: Fed. R. Civ. P. 23(a)(3)

68.    Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

## Adequacy: Fed. R. Civ. P. 23(a)(4)

69.    Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of other members of the Classes they seek to represent. Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

## Superiority: Fed. R. Civ. P. 23(b)(3)

70.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful

conduct.

71.    Even if members of the Classes could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

## Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

72.    To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

## Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

73.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the Tuition Class)

74.    Plaintiff realleges all preceding paragraphs as though fully set forth herein.

75.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

76.    Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit

14

them to campus; providing them the full on-campus educational experience, including, but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

77.    The contractual terms are as implied and set forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, publications, and course of conduct.

78.    These terms form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

79.    One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within and around New York City.

80.    Defendant does not deny that the physical location of its campus is a main benefit of enrollment that attracts many students to the College:[22]

> "Our 100-acre campus is beautiful and picturesque, with a Normanesque castle overlooking a quad designed by Frederick Law Olmsted, the landscape architect who designed Central Park. Our close proximity to New York City supports numerous internship and networking opportunities, as well as access to one of the most important metropolitan areas in the world."

81.    Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the College as opposed to other institutions of higher learning.

82.    Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

---

[22] Manhattanville College, "Visit the Campus," *available at* https://web.archive.org/web/20200110030608/https://www.mville.edu/undergraduate-admissions/visit-campus (Dec. 8, 2020).

83.    Defendant specifically markets certain classes as being offered on a fully online basis.

84.    Indeed, Defendant dedicates an entire section of its website to these programs, known as "Online Learning" which can be accessed at https://www.mville.edu/online-learning.

85.    Conversely, Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

86.    When visitors enter the "About" page on Defendant's main website (https://www.mville.edu/about-manhattanville), they find that Defendant promises students a balanced education, including internships and networking opportunities:

"We believe higher education elevates students' knowledge both academically and practically. That's why we offer 50+ undergraduate areas of study and 70+ graduate programs, degrees, and certificates reinforced by internships, career counseling, mentors, and networking opportunities. We call it outcomes-based learning."

87.    Students seeking further information about the College are directed to the admissions website, https://www.mville.edu/undergraduate-admissions.

88.    Here, Defendant markets to prospective students that the current Manhattanville College students are:[23]

"… proud to call Manhattanville home. Here, on one of America's most picturesque campuses (we have our own castle!), in one of the nation's most dynamic areas (New York City is just 30 minutes away), on one of the most global campuses anywhere (more than 50 countries are represented here!) Manhattanville students are finding their way. Ready to join us?"

_____

[23] Manhattanville College, "Undergraduate Admissions," *available at* https://web.archive.org/web/20200610094244/https://www.mville.edu/undergraduate-admissions (Dec. 8, 2020).

89.     On Defendant's "Life at Mville" website, Defendant also markets:[24]

"With 40+ student clubs and organizations, there's a group for every Valiant to join. Extracurricular activities are supported and encouraged, providing students an opportunity to dive more deeply into their scholarly or vocational interests and to meet others who share their passion. Plus, employers are impressed by jobseekers who can list outside activities on their resumes. Joining a student club or organization is a great way to meet other *Valiants* and become involved in the Manhattanville culture. Some of these clubs include our college radio station MVL Radio and Touchstone our student newspaper!"

90.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior to January 29, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[25]

91.     Those prospective students who were interested in enrolling at the College after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

92.     When a student is offered admission to the College, that student receives a number of further communications and has a number of additional interactions with Defendant.

93.     During this time, students also review the "Student Handbook" and the College Catalog which can be found at https://www.mville.edu/life/student-services/dean-students/student-conduct and https://www.mville.edu/academics/college-catalogs respectively.

---

[24] Manhattanville College, "Life at Manhattanville," *available at* https://www.mville.edu/life-manhattanville (Dec. 8, 2020).
[25] January 22, 2020 is the approximate date that students were permitted to withdraw from the College for the Spring 2020 term and receive a full tuition refund. https://www.mville.edu/sites/default/files/registrar/2019_2020_academic_calendar_2_2020.pdf (Dec. 3, 2020).

94.    The Student Handbook opens with a "welcome" message that states, "As of today, you are now a member of our community of rational discourse!"[26]

95.    This message goes on to boast their institution's "proximity to the nearly endless educational and cultural opportunities of New York City. You will also find important information about places to turn to when you are in need of help, whether academic, health-related, or when you just find yourself confused and in need of some good advice."[27]

96.    Defendant's Handbook also gloats of Manhattanville College being "diligent in maintaining the College's buildings and grounds, with special concern for safety and security."[28]

97.    Defendant further promises that their campus is remarkably safe, as they have employed: emergency on-site security personnel; callboxes/blue light emergency phones; an on-campus weapon's policy; emergency shelter procedures; and other policies covering a wide range of possibility. Defendant desires to have student feel comfortable on-campus, so that they invest in that on-campus product.[29]

98.    In the same security section of the Student Handbook, Defendant dedicates six pages to statistics reflecting low crime rates for those who choose to live on-campus.

99.    Upon further consideration of Defendant's offer, Plaintiff's had the ability to search Defendant's website and find many offered services above and beyond simple in classroom academia.

---

[26] Manhattanville College, "Student Handbook Code of Conduct," *available at* https://mville.smartcatalogiq.com/2019-2020/Student-Handbook-Code-of-Conduct/President-s-Welcome (Dec. 3, 2020).
[27] *Id.*
[28] Manhattanville College, "Security Report," *available at* *https://www.mville.edu/sites/default/files/MVILLE%20Annual%20Security%20Report%202018%20-%20FINAL_0.pdf* - Most up to date - Manhattanville College webpage links to 2018 statistics: https://www.mville.edu/life-manhattanville/campus-safety-security  (Dec. 8, 2020).
[29] *Id.*

100.    Defendant's website advertises to potential students about Manhattanville's Center for Student Involvement and Leadership ("CSIL").  Here, Defendant states, "[CSIL's mission is to] empower, engage and educate students, and to support the mission of the College. CSIL collaborates with Student Affairs and Academic Affairs across campus to develop social and educational programs and traditions which support the college mission, foster student development, and build institutional spirit. CSIL contributes to the creation of a vibrant campus life and student personal growth through participation in student clubs/organizations, Student Government Association, traditions, and events occurring both on and off campus."[30]

101.    Defendant promises students from surrounding and distant areas that they too can take part in on-campus life as a "Commuter Student."  Defendant provides access for all students to travel to campus for the on-campus experience, "whether you take a car, bus, train, or uber…" Additionally, providing local transportation travel schedules, on-campus parking deals, traffic maps, and even local gas pricing.[31]

102.    Commuter Students are offered multiple on-campus dining options:[32]

"Between classes, studying, going to work, and your social life, who has time to get an affordable, healthy, well-balanced meal in a convenient time frame? Take a break! Purchase a meal plan and you'll always get to eat what you want, when you want, how you want!
***Why should I purchase a meal plan?***
•    Commuter plans assist students in becoming part of the campus community
•    Enjoy monthly events
•    Keep your precious parking spot
•    Healthy options
•    Homestyle options

---

[30] Manhattanville College, "Student Activities," *available at* https://www.mville.edu/life/campus-life/office-student-activities (Dec. 8, 2020).
[31] Manhattanville College, "Student Commuter," *available at* https://www.mville.edu/content/commuter-life (Dec. 8, 2020).
[32] Manhattanville College, "For Commuters," *available at* https://dineoncampus.com/mville/for-commuters (Dec. 8, 2020).

- No dishes, grocery shopping, or cooking
- Have more time to eat, less time traveling
- No delivery waiting time or delivery fees"

103.    Defendant also offers all students over 40 student clubs/organizations for on-campus students to take advantage of including those based in cultural and religious preferences, civic engagement, and many more to become engaged in the on-campus community.[33]

104.    For example, Civic Engagement clubs and organizations grant students opportunities to "champion active citizenship through collaboration and action with the community."[34]

105.    Defendant also provides students on-campus with more events stating: "There is always something going on at Manhattanville!  There are always a range of options from movie screenings, concerts, comedians, inflatables, and more!"[35]

106.    Defendant promises on-campus students a peer mentoring program that "connects incoming students with successful upper-class students in order to help them with the transition to college life."[36]

107.    To further help incoming students transition to on-campus life, Defendant holds "New Student and Family Orientation," in order to meet faculty, staff, and students, and learn how to get involved on campus."[37]

---

[33] Manhattanville College, "Student Life at Manhattanville College" *available at* https://www.mville.edu/life/campus-life/office-student-activities/student-clubs-and-organizations (Dec. 8, 2020).
[34] Manhatanville College, "Civic Engagement," *available at* https://www.mville.edu/life/campus-life/office-student-activities/student-clubs-and-organizations/civic-engagement (Dec. 8, 2020).
[35] Manhatanville College "Student Activities*," available at* https://www.mville.edu/life/campus-life/office-student-activities (Dec. 8, 2020).
[36] *Id.*
[37] *Id.*

108.    "Mville tickets" are discounted event tickets offered to on-campus students as the "number one stop for Broadway shows, athletic events, off-campus trips, movie tickets, and more!"[38]

109.    Defendant welcomes students to the community and to "Residence Life" by operating a "Residence Life and Conference Service." This service offered by the Defendant "is an integral part of the educational program and academic support services of the institution.  Far more than simply housing and roommate requests - we strive to create a dynamic living environment in which all students are comfortable and able to fully develop as individuals."[39]

110.    Defendant maintains:[40]

"Manhattanville's intimate campus fosters a close-knit community, and while its Residence Halls will never replace the cozy familiarity of home, they're sure to rival it - just ask our residents! The Office of Residence Life is committed to preparing its students for an ever-growing global community by promoting a safe, secure, and inclusive residential community that fosters academic success, holistic development, mutual respect, and civic engagement. We're more than just student housing - we're living! Education, fun, development, and more."

111.    Defendant continues to list opportunities provided to student's in exchange for their tuition:[41]

"It's the best combination of bright lights and quiet nights. Students find it easy to hop onto the Valiant Express—Manhattanville's free shuttle to New York City and points beyond—to explore one of the world's most cosmopolitan urban centers or to travel there for work or an internship at a Fortune 500 company. The city is a convenient 30-minute drive away from campus! Manhattanville's scenic campus provides a peaceful contrast, offering an environment supportive of academic pursuits and community-building. Students look forward yearly to events such as

---

[38] *Id.*

[39] Manhatanville College, "Office of Residence and Conference Services," *available at* https://www.mville.edu/life/campus-life/office-residence-life-and-conference-services (Dec. 8, 2020).

[40] Manhattanville College "Life at Manhattanville," *available at* https://www.mville.edu/life-manhattanville (Dec. 8, 2020).

[41] *Id.*

Fall Fest'Ville, 200 Nights, Quad Jam, and the Spring Formal but find equal joy in the day-to-day at Manhattanville, where bonds last a lifetime."

112.    Defendant further proposes to potential students that:

"As a first-year student you will engage in curricular and co-curricular learning opportunities rooted in the College's tradition of education in the Liberal Arts and Sciences and its commitment to the value of academic, experiential, and service learning.   Our welcoming, inclusive, and supportive environment allows all students to become effective participants in their own learning and development When you join our community as a first year student, you will be encouraged to develop as an independent and ethical thinker. You will also be empowered to search for knowledge, express your creativity, participate in community building, and synthesize a wide range of learning experiences.
…
Manhattanville students extend learning in the classroom through a variety of opportunities and cultural events in the surrounding area, including New York City.

In and out of the classroom, our first- year students are challenged to acquire the skills, independence and self-awareness they need in order to shape their own academic and personal goals."[42]

113.    Defendant has made "many changes and investments in student life and infrastructure and facilities." These changes include a "Center for Inclusion" to promote social justice education and dialogue, brand new renovations of lighting, classroom floors, tennis courts, and a new café (including Starbucks items), extended hours at the gym, new gym equipment, installation of 3,600 solar cells, a solar car port, and a new lounge - with new computers, paint job, and a gaming system.[43]

---

[42] Manhatanville College "First Year Valiant Experience," at available https://www.mville.edu/academics/undergraduate-experience/first-year-valiant-experience (Dec. 8, 2020)
[43] Manhattanville College "New at Manhattanville," *available at* https://www.mville.edu/new-manhattanville (Dec. 8, 2020).

114.    Additionally, Defendant goes on to state, that as tuition-paying students, Plaintiff will see "over the next couple of years" the changes and investments continue for "programming, facilities, and student life."[44]

115.    When students officially accept Defendant's offer of admission, they must make arrangements to pay tuition and fees.

116.    Once students pay their tuition, it comes time to register for classes. This is another area where Defendant specifically emphasizes the distinction between its in-person and online class offerings through the academic catalogs and course listings on the website.

117.    When students log in to their Manhattanville's Course Catalog, they are given the opportunity view and select the classes they prefer to study. Some of these classes are online courses.[45]

118.    According to College Factual, of the 2,494 Manhattanville College students enrolled in 2019-20 (1,590 undergraduates/ 904 graduates), 27 students (all graduate students) chose to take online classes at Manhattanville College.[46] That number grew from 23 two years before, and 12 students two years before that.

119.    Therefore, upon information and belief, undergraduate students did not have the option to enroll in Defendant's online, remote product.

120.    Upon registration, students in many of Defendant's on-campus schools and programs were subject to strict personal attendance requirements as set forth in various

---

[44] *Id.*

[45] Manhattanville College, "Course Catalog," *available at* https://www.mville.edu/sites/default/files/Registrar/8-29-17_UNDG%20Catalog_17-18_3.pdf (Dec. 8, 2020).

[46] College Factual, "Manhattanville College," *available at* https://www.collegefactual.com/colleges/manhattanville-college/academic-life/distance-learning/ (Dec. 8, 2020).

departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.

121.    Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus as further evidenced by the parties' prior course of conduct.

122.    Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

123.    Each day for the weeks and months leading up to March 12, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

124.    Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

125.    Each day for the weeks and months prior to announced closures, students had access to the full campus.

126.    Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

127.    Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

128.    However, the College breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning

platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

129.    This cause of action does not seek to allege "academic malpractice."

130.    Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person, on-campus education, with its featured ancillary and related services, and the other being online distance education.

131.    Plaintiff and other members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

132.    However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

133.    Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

134.    Defendant's refusal to offer refunds is in bad faith.

135.    Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

136.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Tuition Class)

137.    Plaintiff realleges all preceding paragraphs as though fully set forth herein.

138.    Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

139.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

140.    Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

141.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

142.    Defendant has realized this benefit by accepting such payment.

143.    However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

144.    Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services promised.

145.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

26

146.    It is significantly cheaper for Defendant to provide the online product than the on-campus product.

147.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

148.    Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

149.    Equity and good conscience require that the College return an appropriate portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

150.    This is particularly true where, as here, Defendant is supported by a $31.2 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, upon information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

151.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $861.5 thousand for itself, as opposed to passing it along to students.

152.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the Fees Class)

153.    Plaintiff realleges all preceding paragraphs as though fully set forth herein.

154.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

155.    In addition to tuition, Defendant charges a number of mandatory fees.

156.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

157.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

158.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

159.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

160.    According to Defendant, Plaintiff was required to pay certain mandatory fees, together with other fees, including, but not limited to, a laundry fee, rooming fee, and meal plan fee.

161.    More specifically, Defendant charges certain mandatory fees to students enrolled in the undergraduate in-person programs, including but not limited to a $725.00 "Comprehensive Fee" per semester, which includes "all the resources available to on-campus students, such as registration, student activities, the library, gym, common areas, health services, and orientation."

162.    As a result of the campus lockdown, and his being moved off campus, Plaintiff no longer had the benefit of the services for which these fees have been paid.

28

163.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, as well as the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits and/or programs related to those fees, as promised.

164.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

165.    However, Defendant breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

166.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

167.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

168.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**(Plaintiff and Other Members of the Fees Class)**

169.    Plaintiff realleges all preceding paragraphs as though fully set forth herein.

170.    Plaintiff brings this count on behalf of himself and other members of the Fees Class.

171.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

172.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

173.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

174.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

175.    Defendant realized this benefit by accepting such payment.

176.    Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

177.    Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

178.    This is particularly true where, as here, Defendant is supported by a $31.2 million endowment, while its students, on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its

students have incurred substantial debt to finance an educational experience that they did not receive.

179.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $861.5 thousand for itself, as opposed to passing it along to students.

180.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT

### (Plaintiff and Other Members of the On-Campus Housing Class)

181.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

182.    Plaintiff brings this count on behalf of himself and other members of the On-Campus Housing Class.

183.    Plaintiff and the On-Campus Housing Class entered into contract with the College which provided that Plaintiff and other members of the On-Campus Housing Class would pay certain fees for or on behalf of students and, in exchange, the College would provide on-campus housing and on-campus dining options to those students for the duration of the Spring 2020 semester.

184.    Plaintiff and other members of the On-Campus Housing Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out of pocket or by using student financing.

185.    The College breached the contract with Plaintiff and other members of the On-Campus Housing Class when it required students to vacate such housing and moved all classes to

online-distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities prior to the completion of the Spring 2020 semester, thus ending their paid-for dining options and literally evicting them.

186.    The College retained fees paid by Plaintiff and other members of the On-Campus Housing Class without providing them the full benefit of their bargain.

187.    Plaintiff and other members of the On-Campus Housing Class have suffered damage as a direct and proximate result of Defendant's breach, including, but not limited to, being deprived of the value of the housing that the room fees were intended to cover.

188.    As a direct and proximate result of Defendant's breach, Plaintiff and the On-Campus Housing Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include, but not be limited to, disgorgement of the pro-rata amount of fees that were collected but for which room, board, meals, and services were not provided.

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the On-Campus Housing Class)

189.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

190.    Plaintiff brings this count on behalf of himself and other members of the On-Campus Housing Class.

191.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Fifth Cause of Action above.

192.    The College has received a benefit at the expense of Plaintiff and other members of the On-Campus Housing Class to which it is not entitled.

193.    Plaintiff and other members of the On-Campus Housing Class paid substantial

room and board fees for the right to occupy on-campus housing, as well as fees for access to on-campus meals and dining options, and did not receive the full benefit of the bargain.

194.    Plaintiff and other members of the On-Campus Housing Class conferred this benefit on Defendant when they paid the fees.

195.    Defendant has realized this benefit by accepting such payment.

196.    Defendant has retained this benefit, even though Defendant has failed to provide the housing, meals, services, and other amenities for which the fees were collected, making Defendant's retention unjust under the circumstances.

197.    Equity and good conscience require that the College return a portion of the monies paid in fees to Plaintiff and other members of the On-Campus Housing Class.

198.    This is particularly true where, as here, Defendant is supported by a $31.2 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

199.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $861.5 thousand for itself, as opposed to passing it along to students.

200.    Defendant should be required to disgorge this unjust enrichment.

## FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
## VIOLATIONS OF NY GENERAL BUSINESS LAW § 349, § 350, *ET SEQ.*

### (Plaintiff and Other Members of All Classes)

201.    Plaintiff realleges all preceding paragraphs as though fully set forth herein.

202.    Plaintiff brings this count on behalf of himself and all other members of the Classes.

33

203.    New York General Business Law § 349: Deceptive Acts and Practices Unlawful provides for consumer protection by declaring as unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."[47]

204.    New York General Business Law § 350: False Advertising Unlawful provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."[48]

205.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of New York General Business Law § 349, § 350, *et. seq.* by engaging in the activities described herein.

206.    Defendant is a private college which, among other things, offered in-person, hands-on curriculum to Plaintiff and other members of the Classes.

207.    Plaintiff and other members of the Classes are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's College for the Spring 2020 semester, and to receive access and services (including housing and meals) in exchange for additional optional or mandatory fees.

208.    Defendant's efforts to sell its services to prospective students, which included Plaintiff and other members of the Classes, were "consumer-oriented."

209.    Defendant admits that such students and prospective students are consumers, titling its informational page "Student Consumer Information."[49]

210.    As part of its marketing practices and recruitment efforts, as described above,

---

[47] *See* New York General Business Law § 349.
[48] *See* New York General Business Law § 350.
[49] Manhattanville College, "Student Consumer Information," *available at* https://www.mville.edu/about/fast-facts/student-consumer-information (Dec. 8, 2020).

Defendant made numerous statements, representations and omissions to the public (including Plaintiff and other members of the Classes) with respect to the in-person educational opportunity and on-campus access and experiences that students who enrolled at the Defendant would receive. Such statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the College for the Spring 2020 semester.

211.    With the reasonable expectation that students who enrolled at the College would receive in-person academic instruction with an on-campus experience (including housing and/or dining) for the entire 2020 Spring semester, Plaintiff and other members of the Classes paid tuition and fees to Defendant.

212.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire 2020 Spring semester, were evicted from on-campus housing, and were not provided on-campus meals.  As a result, Plaintiff and other members of the Classes were proximately caused to pay inflated tuition and fees because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

213.    Therefore, the aforementioned statements, representations and omissions made by the College were objectively false, misleading and deceptive to Plaintiff and the other Class Members, as well as the public at large.

214.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Classes because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

215.    In fact, Plaintiff and other students were not permitted to receive and benefit from

35

on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

216.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the College then they would be entitled to receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

217.    Plaintiff and other Class Members were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

218.    As a result of Defendant's foregoing violations of New York General Business Law § 349, § 350, *et seq.*, Defendant has  directly and proximately caused damage to Plaintiff and other members of the Classes and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of other members of the Classes, pray for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class Members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition, fees, on-campus housing, and meals;

D.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition, fees, on-campus housing, and meals;

E.     Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition, fees, on-campus housing, and meals;

F.     Scheduling a trial by jury in this action;

G.     Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.      Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I.     Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.


Dated January 12, 2021

                                        **MOREA SCHWARTZ BRADHAM**
                                        **FRIEDMAN & BROWN LLP**

                                        By: /s/ John M. Bradham
                                               John M. Bradham (JB2342)
                                               Peter B. Katzman (PK8030)
                                        444 Madison Avenue, 4th Floor
                                        New York, New York 10022
                                        Tel: (212) 695-8050
                                        Email: jbradham@msbllp.com
                                               pkatzman@msbllp.com

                                               -and-

                                        **TOPTANI LAW PLLC**
                                        Edward Toptani (ET6703)
                                        375 Pearl Street, Suite 1410
                                        New York, New York 10038

Tel: (212) 699-8930
Email: edward@toptanilaw.com

-and-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin (*Pro Hac Vice* Forthcoming)
Roy T. Willey, IV (*Pro Hac Vice*
Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: eric@akimlawfirm.com
        roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF AND
THE PROPOSED CLASSES**